ADAMS & CO.

ATTORNEYS

90 Broad Street 2ND Floor
New York, NY 10004
Tel: 212-430-6590
Fax: 212-981-3305

> Application for a bail review hearing granted. The hearing has been scheduled for 9/21/2023 at 11:00 a.m. to be held in Courtroom 520 of the White Plains Courthouse, provided that counsel files by 9/12/2023 a copy of the transcript of the bail hearing held before Magistrate Judge Davison on 12/6/2022. The government is directed to file a letter stating its position with respect to defendant's application by 9/12/2023. The Clerk of Court is respectfully requested to terminate the pending letter-motion (Doc. 97).
>
> SO ORDERED.
>
> _____
> Philip M. Halpern
> United States District Judge
>
> Dated: White Plains, New York
>            September 5, 2023

**VIA E.C.F. AND ELECTRONIC MAIL**

Hon. Philip M. Halpern
United States District Court Judge
United States Courthouse
300 Quarropas Street
White Plains, NY 10601

Re:  United States v. Shamell Williams, 22 Cr. 641 (PMH) – Motion for Release of Mr. Shamell Williams Pending Trial

Dear Judge Halpern:

## PRELIMINARY STATEMENT

*Introduction*

I write to ask that Your Honor: 1) find that the government failed to show by clear and convincing evidence that there were no conditions, or combination of conditions that would reasonably assure, the safety of the community, should Mr. Williams be released, and 2) the Magistrate Court abused its discretion by making such a finding. Counsel has proposed the following conditions of bail: 1) $150,000.00 bond co-signed by three financially responsible people; 2) home confinement and GPS monitoring; 3) pretrial supervision as directed by Pretrial Services.

The following suretors have been proposed:

1. Herman Pearson (stepfather)
   Employer: C.N. Wood Enviro LLC
   Salary: $80,000
   Retirement account: $50,000
2. Hannah Rose (girlfriend)
   Employer: Self-employed (recently discharged from the military)
   Salary: $60,000 (approximately)
   Savings Account: $66,000
3. Rikki Pearson
   Employer: Unemployed
   Salary: N/A

*Procedural History and Case Background*

On December 6, 2022, Mr. Shamell Williams was arrested in connection with the following charges: count 1, racketeering conspiracy in violation of 21 U.S.C. §1962(d); count 12, Hobbs Act Robbery, in violation of 18 U.S.C. §1952; count 13, possession and brandishing of a firearm in furtherance of the robbery charged in count 12, in violation of 18 U.S.C. §924(c)(1)(A)(ii); count 14, narcotics conspiracy, in violation of 21 U.S.C. §841(b)(1)(A); and count 15, possession of a firearm in furtherance of the narcotics conspiracy charged in count 14, in violation of 18 U.S.C. §924(c)(1)(A)(i).

According to the government's theory, Mr. Williams, "is an associate of the Grimz who participated in a violent gunpoint robbery and stabbing in or about October 2021…[in which]…Williams and other Grimz members pistol-whipped and stabbed a rival drug dealer, who was later hospitalized, and stole from him."  See Gov. Det. Letter dated December 6, 2022.  Further, the government, without any evidence claimed that "Williams also has access to firearms, as evidenced by his attempted weapons conviction".  Id.  Finally, the government claimed that a search of Mr. Williams' hotel room, "recovered approximately a pound of marihuana packaged for resale and a scale.  Id.

At a bail hearing held on the same day, Judge Davison denied our request for bail, finding that there were no conditions or combination of conditions that would assure the safety of the community should Mr. Williams be released.

## APPLICABLE LAW

In a pretrial setting, "the accused is shielded by the presumption of innocence, the 'bedrock[,]axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law.'"  See Betterman v. Montana, 136 S.Ct. 1609, 1614 (2016)(quoting Reed v. Ross, 468 U.S. 1, 4 (1984)).  Even though the presumption of innocence attaches to any defendant through a trial or guilty plea, see 18 U.S.C. §3142(j), a defendant does not have an absolute right to be released on bail following arrest.  See United States v. Salerno, 481 U.S. 739, 749 (1987).  However, the law, in general, favors release on bail.  See United States v. Sabhani, 493 F.3d 63 (2d Cir. 2007).

For the government to prevail on the issue of dangerousness, they:

> must prove, by clear and convincing evidence, not only a defendant's potential danger to the community, but also that no conditions can reasonably assure the safety of any other person and the community.  This quite meaningful showing will only apply to a limited number of individuals.  This onerous standard also reflects an acknowledgment that as Justice Marshall opined, a defendant's interest in maintaining her liberty before trial is paramount, and an essential component of protecting

2

the presumption of innocence. Due to the tremendous stakes involved, an assessment of whether an individual must be detained before trial must be conducted on a case-by-case basis.

Where a defendant is charged with certain enumerated offenses, a rebuttable presumption arises that no conditions can provide the requisite assurances…[and] "the defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. English, 629 F.3d 311, 319 (2d Cir. 2011) (quotation omitted).  A defendant's satisfying this burden "does not eliminate the presumption" but rather "remains a factor to be considered among those weighed by the district court." Id. (quotation omitted). Regardless, in a presumption case, the Government still bears the burden of persuasion of demonstrating dangerousness by clear and convincing evidence…

See United States v. Paulino, 335 F.Supp.3d 600 (2018).

Finally, to determine whether a defendant is a danger to the community, the Court must examine several factors.  These factors include: (1) the nature and circumstances of the offense (2) the weight of the evidence against the person (3) the history and characteristics of the person (family ties, employment, financial resources, past conduct, criminal history, and whether the person was on release pending trial); and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  See Id.

An examination of these factors should result in the Court releasing Mr. Williams pursuant to the conditions proposed.

THE BAIL REFORM ACT REQUIRES THE COURT TO RELEASE MR. WILLIAMS

Nature and Circumstances of the Offense

*Robbery Count* - While not a "schoolyard fight" the robbery with which Mr. Williams has been charged was not the worst act of violence the government has prosecuted, particularly with respect to the acts of violence and the level of violence in various indictments charged in connection with Newburgh.  The conduct, while premeditated, does not appear to have had advanced planning or sophistication on Mr. Williams' part, or on the part of any other participant in the robbery.  Mr. Williams was not alleged to have himself possessed a firearm during the incident.  There is no allegation or indication that Mr. Williams led the robbery or played any leadership role in the Grimz Enterprise.  Additionally, there is no indication that that Mr. Williams can order anyone

to commit further criminal acts or intimidate witnesses. The robbery allegation does not involve a solo act of violence. Rather, it involves group activity, which puts Mr. Williams in the non-essential role as a follower with respect to his alleged participation in criminal conduct.

Further, the alleged victim's injuries did not require significant medical treatment. Based upon information and belief, the alleged victims have cooperated with law enforcement; however, there is no evidence that Mr. Williams threatened them or actually harmed them subsequent to the incident. Additionally, he has not made any threats to any other alleged witnesses or cooperators in this matter.

*Narcotics Count* - Based on the allegations made by the government, Mr. Williams' alleged narcotics conduct was directly connected to his association with members of the Grimz. However, as there is no indication that Mr. Williams has any leadership role with respect to that organization, any narcotics conduct has been neutralized. Further, the proposed condition of residing with his mother and stepfather, as opposed to the transient hotel room in which he stayed, further neutralizes the possibility of engaging in conduct related to narcotics.

Weight of the evidence

*Robbery Count* - The Court in Paulino took great care not to place undue significance on the "weight of the evidence", considering that the presumption of innocence still applied. Supra Paulino. In Paulino, the alleged attack was corroborated by video, photographic and bystander accounts, as well as an alleged inculpatory statement on the part of the defendant. Id. In the instant case, the charged robbery was not corroborated by video or photographic evidence. While there are possible statements from one or more cooperators or witnesses, there is no statement from Mr. Williams. The instant case, like Paulino, is in its infant stages.

*Narcotics Count* - the government has alleged that a social media picture of Mr. Williams sitting on a car while "flashing" cash is a basis of his danger to the community. The government has used a picture to assume the conduct underlying that picture. This allegation is nothing but innuendo.

History and characteristics of the defendant/Danger to any person or the community

Although Mr. Williams' criminal history has a conviction for a firearms offense, it was unrelated to actual violent conduct. He was not arrested for firing or otherwise using the firearm. Further, there is no evidence that his possession of the firearm was related in any way to an association with the Grimz or any other alleged criminal enterprise. Based on Mr. Williams' criminal history, although he has a felony arrest and conviction, it does not amount to any pattern of illegal activity on his part leading up to the instant

4

offense.

Further, Mr. Williams has no mental health issues. While he may be a frequent user of marijuana, there is no evidence demonstrating a nexus between that drug use and the offense conduct, or other risky behavior. As a result, it is unlikely that Mr. Williams' personal use rises to the level of posing a public danger.

Further, he does not have a history of not returning to court or committing crimes while under court supervision. While the government might state that the crimes with which Mr. Williams has been charged were committed while on post-release supervision with respect to his New York State conviction, this should be given little weight, as it undermines the presumption of innocence in this instance.

Finally, while his living circumstances prior to his arrest may have been unstable, if released, he will be living with his mother, Rikki Pearson, who cares for his young son, and she will allow him to reside in her home, with her husband.

## CONCLUSION

> Honoring the presumption of innocence is often difficult; sometimes we must pay substantial social costs as a result of our commitment to the values we espouse. But at the end of the day the presumption of innocence protects the innocent; the shortcuts we take with those whom we believe to be guilty injure only those wrongfully accused and, ultimately, ourselves.
>
> Throughout the world today there are men, women, and children interned indefinitely, awaiting trials which may never come or which may be a mockery of the word, because their governments believe them to be "dangerous." Our Constitution, whose construction began two centuries ago, can shelter us forever from the evils of such unchecked power. Over 200 years it has slowly, through our efforts, grown more durable, more expansive, and more just. But it cannot protect us if we lack the courage, and the self-restraint, to protect ourselves.

Supra Paulino, citing Justice Thurgood Marshall, dissenting in United States v. Salerno, 481 U.S. 739.

The government failed to show by clear and convincing evidence that there were no conditions, or combination of conditions that would reasonably assure, the safety of the community, should Mr. Williams be released. Further, the Magistrate Court abused its discretion by making such a finding. The conditions proposed by counsel are more than adequate to allay any concerns with respect to the safety of the community, and

they are the least restrictive conditions, as contemplated by 18 U.S.C. §3142. We ask that the Court release Mr. Williams on the conditions proposed in this letter.


Regards,

Karloff C. Commissiong, Esq.


cc:    A.U.S.A. Jennifer Ong (via ECF and electronic mail)
       A.U.S.A. Nicholas Bradley (via ECF and electronic mail)
       A.U.S.A. Ryan Wolfe Allison (via ECF and electronic mail)